IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP BOYD | : | CIVIL ACTION |
| | : | NO. 06-5628 |
| v. | : | |
| | : | |
| JOHN KISSINGER, et al. | : | |

O'NEILL, J.                                                                                       JUNE 25, 2008

## MEMORANDUM

On November 22, 2006 plaintiff Philip Boyd filed a complaint in the Court of Common Pleas of Chester County alleging that defendants John Kissinger, Jeffrey Nash and Jason Culbertson violated his Fourth Amendment rights by applying excessive force while restraining him during an incident on November 24, 2004. Plaintiff also asserted assault and battery claims against defendants under Pennsylvania law. Defendants removed the action to this Court on December 26, 2006 pursuant to 28 U.S.C. § 1441. I have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

Presently before me is defendants' motion for summary judgment and statement of undisputed facts, plaintiff's response and statement of facts, and defendants' reply.

## BACKGROUND

On November 24, 2004 plaintiff Philip Boyd, accompanied by his friend William Hyden, drove his vehicle to the Caln Township Roller Rink to pick up his four children: Shaylisha, age 15; Phalena, age 13; Phil, Jr., age 12; and Terrell, age 9. When he arrived at the rink plaintiff observed two girls fighting with his daughter Shaylisha within a large crowd of at least 150 minors. The scene by all accounts was chaotic, and Hyden characterized it as "impossible

1

chaos." Plaintiff exited his vehicle, ran to Shaylisha, and attempted to separate the girls. As he attempted to escort Shaylisha back to the vehicle, however, plaintiff also directed his daughter to fight back. According to bystanders plaintiff yelled, "kick her ass" and "beat the shit out of them." Plaintiff's daughter Phalena also was fighting with a group of girls at the time. In a handwritten statement Phalena stated that her father directed her and Shaylisha to fight back after the initial fighting had stopped.

With the assistance of Hyden plaintiff was able to escort Shaylisha, Phalena and plaintiff's two sons into his vehicle. Around this time defendants arrived on the scene, responding to a dispatch about a fight in progress involving approximately 180 persons.

After his four children were inside his vehicle, plaintiff noticed that his cousin's child Jamar Boyer appeared to be involved in an argument. Defendant Officer Jason Culbertson testified at plaintiff's criminal trial that he was questioning Boyer when plaintiff appeared and said, "Fuck these guys. You don't have to fucking talk to them." According to Culbertson plaintiff next grabbed Boyer's shoulders and dragged him to the vehicle. Plaintiff told Boyer, "Get in the damn car."

Meanwhile the owner of the roller rink informed defendant Sergeant John Kissinger that an individual fitting plaintiff's description had been encouraging young girls to fight, and a roller rink employee subsequently identified plaintiff as the described individual. Kissinger approached plaintiff's vehicle as plaintiff was entering the driver's seat.

By all accounts plaintiff entered driver's seat of the vehicle and attempted to close the door. However, the details of Kissinger's initial interaction with plaintiff and plaintiff's ensuing arrest are widely disputed. According to plaintiff, because he was unaware of Kissinger's

presence in the doorway, plaintiff inadvertently closed the door on Kissinger. According to Kissinger, he approached plaintiff's vehicle and explained that he needed to see some identification prior to plaintiff's attempt to close the door and, instead of producing identification, plaintiff said he was leaving and slammed the door of the vehicle on Kissinger. After his first attempt to close the door, plaintiff contends Kissinger asked him if he had a problem. Kissinger contends that he told plaintiff that he would be arrested if he slammed the door on him again.

     Kissinger testified that plaintiff then stared directly at him and started to slam the door on him again as hard as he could. According to plaintiff, he told Kissinger that he was going to take the children home and began pulling the door shut again, but Kissinger stepped into the doorway and knocked the door out of his hand with his left shoulder. Kissinger testified that at that time he told plaintiff that he was under arrest and requested that plaintiff exit the vehicle. Plaintiff contends that at no time during the incident did Kissinger tell him that he was under arrest.

     Plaintiff alleges that Kissinger with both hands grabbed plaintiff by his hair, which was in dread locks, and tugged repeatedly until he pulled plaintiff from the vehicle. Plaintiff alleges that several of his dread locks were pulled from his scalp at this time. Plaintiff fell to the ground on top of Kissinger and struck his head. Because one of his feet remained trapped in the pedals and foot well of the vehicle, plaintiff alleges that the fall caused significant injury to his knee.

     Kissinger admitted that he grabbed plaintiff by the hair and pulled him out of the vehicle. Kissinger testified that he placed his hands on plaintiff out of concern that plaintiff in his condition would speed out of the area, perhaps harming individuals in the crowd around the vehicle. It is unclear from the record how much time elapsed between when Kissinger requested

that plaintiff exit the vehicle and when plaintiff was forcibly removed. Further, it is unclear whether Kissinger was alone, as plaintiff contends, or an Officer Glen Rasp – who is not a defendant in this matter – was present. Rasp testified that he used a collapsible baton in a leverage maneuver in an unsuccessful attempt to force plaintiff out of his vehicle.

The factual inconsistencies between accounts continue after plaintiff was removed from the vehicle. According to plaintiff, while on the ground he supported himself by placing his weight on his arms in a "push-up position." Plaintiff testified that at this point a large officer jumped on his back causing him to bump his head, and that the same officer applied a choke-hold. Plaintiff asserts that defendant Sergeant Jeffrey Nash was unable to gain control of his right arm at this time because he was supporting his body weight on that arm. Plaintiff asserts that Kissinger was free to slide from underneath him. Kissinger testified that he continued to tell plaintiff that he was under arrest and that he should stop resisting, and defendants contend that the other officers were shouting at plaintiff to get off Kissinger. Plaintiff however asserts that he attempted to stand on several occasions but Kissinger still was holding his hair, which prevented him from standing.

While on top of Kissinger plaintiff contends that he was shot with a Taser, stunned, beaten and truncheoned by police officers. Defendant Culbertson admits to shooting a Taser and hitting plaintiff's left front chest area and left pant leg. Culbertson testified that because the Taser proved ineffective he then used a drive stun device by placing the Taser directly on plaintiff's exposed skin. Plaintiff alleges that the drive stun device was used about eight times during the incident. Culbertson asserts that he used the drive stun device multiple times on plaintiff but to no effect as plaintiff continued to resist by actively pulling back from the officers.

4

While plaintiff was on the ground Officer Rasp admits to using his collapsible baton again in a leverage maneuver in an unsuccessful attempt to pry plaintiff from Kissinger. Rasp further testified that he struck plaintiff between three and five times in the lower right leg with the baton in an effort to make plaintiff comply with the directives of the officers. Rasp stated that plaintiff dropped to the ground after the final strike of the baton.

Kissinger testified that while on the ground with plaintiff the crowd swarmed around them and that unidentified crowd members kicked him in the head, side and back. Culbertson testified that during the incident he was struck in the head from behind by unidentified crowd members and kicked in the testicles. He further testified that he saw crowd members hit and kick Nash in the back and kick Kissinger in the head. Nash testified that the crowd was screaming and shouting at the police. Nash saw one crowd member push Culbertson and another kick Kissinger in the head while he was on the ground. He testified that he suffered numerous blows to the back and legs from crowd members. Though defendants note that once plaintiff was removed from the area the crowd quickly calmed down, Hyden testified that the crowd calmed down as a result of watching the officers attack plaintiff without provocation.

Once officers handcuffed plaintiff, Kissinger grabbed plaintiff by the hair and walked him to a police car. According to plaintiff Kissinger slammed his chest into the hood or trunk of the police car. During the incident plaintiff sustained marks, bruises and scrapes to his body, along with injury to his knee.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

I.      Plaintiff's § 1983 Claim

Section 1983 provides an avenue for individuals to adjudicate violations of rights secured under federal constitutional or statutory law.  Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  A valid claim under § 1983 must plead adequately three elements: (1) defendants acted under color of law; (2) defendants violated plaintiffs' federal constitutional or statutory rights; and (3) that violation caused injury to plaintiffs.  Elmore, 399 F.3d at 281.

Where a state official's actions allegedly give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit.  Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005), citing Hunter v. Bryant, 502 U.S. 224, 227 (1991).  "[T]he qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (citations and internal marks omitted).  Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), "it is imperative to resolv[e] immunity questions at the earliest possible stage in litigation," Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citations and emphasis omitted).

In Saucier v. Katz, the Supreme Court set forth a two-step analysis for a defendant's assertion of qualified immunity. See generally id. The threshold question of the qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [state actor's] conduct violated a constitutional right?" Id. at 201. If no constitutional violation is shown the inquiry need not progress and the state actors are entitled to judgment; however, if the facts alleged demonstrate a constitutional violation, the Court must proceed to ask whether the constitutional right was clearly established at the time in light of the specific context of the case at bar. Id. This two-step inquiry reflects the rationale behind the doctrine of qualified immunity: "The general rule of qualified immunity is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages. Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." Anderson v. Creighton, 483 U.S. 635, 646 (1987) (quotation and citation omitted).

In his complaint plaintiff asserts that defendants violated his Fourth Amendment rights by applying excessive force while restraining him. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004), quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003). The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Kopec, 361 F.3d at 776, quoting Graham v. Connor, 490 U.S. 386, 397 (1989). Therefore, "an officer's good faith is

irrelevant and any bad faith motivation on his part is immaterial." Kopec, 361 F.3d at 776, citing Estate of Smith, 318 F.3d at 515; Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.  Therefore "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec, 361 F.3d at 776-77, citing Graham, 490 U.S. at 396.  Additional factors include "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Kopec, 361 F.3d at 777, citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

"Generally, the issue of reasonableness is a question of fact reserved for the jury. Summary judgment is appropriate only if the court 'resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances.'" Brice v. City of York, 528 F. Supp. 2d 504, 513 (M.D. Pa. 2007), quoting Gravely v. Speranza, 219 Fed. Appx. 213, 215 (3d Cir. 2007); see also Abraham, 183 F.2d at 290 ("[R]easonableness under the Fourth Amendment should frequently remain a question for the

jury.").

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002), quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986).

As indicated above the record in this case is replete with factual disputes,[1] and resolving all factual disputes in favor of plaintiff I cannot conclude that the use of force here was objectively reasonable under the circumstances. According to plaintiff's account: (1) after the conclusion of a fight involving his children, he was forcibly removed from the driver's seat of his vehicle without cause after he explained that he wanted to get his children home; (2) in removing plaintiff from the vehicle, Sergeant Kissinger grabbed plaintiff by his hair and pulled so strongly that several of his dreadlocks were pulled from his scalp; (3) the manner in which Kissinger pulled plaintiff from the vehicle caused injury to his knee and his head; (4) an officer placed a choke-hold on him; (5) Officer Culbertson used a Taser and drive stun device on him approximately eight times while Kissinger was holding him down on the ground by his hair; (6) Kissinger slammed his chest slammed against a police car; and (7) at no time was he informed that he was under arrest or that he might be arrested.

---

[1] I additionally note that due to the chaotic scene defendants' statement of undisputed facts in support of their motion for summary judgment is vague and internally inconsistent with respect to the events surrounding plaintiff's arrest. For example, it is unclear how plaintiff resisted by pulling away from the officers, necessitating Culbertson's use of the drive stun device approximately eight times, while plaintiff was on the ground engaged with Kissinger, prompting the officers to yell at plaintiff to get off Kissinger. Also, Rasp's testimony in the record about using a collapsible baton to pry plaintiff from Kissinger while plaintiff was on the ground and then – based on the lack of success of that method of restraint – using the baton to strike plaintiff so that plaintiff would drop to the ground appears to be inconsistent.

Though I recognize that by all accounts defendants were contending with a chaotic and hostile crowd in a tense and rapidly evolving environment, in light of plaintiff's allegations I find material questions exist as to the nature of plaintiff's actions at the scene, whether plaintiff posed an immediate threat to the safety of the officers or others, whether plaintiff actively was resisting arrest, whether plaintiff was acting in a violent or dangerous manner, the duration of the action, and whether defendants were effecting an arrest at the time they used force against plaintiff. In light of these questions, I find that I cannot conclude that defendants' actions were objectively reasonable. I instead conclude that the issue of reasonableness is a question of fact for the jury in this case.

I further conclude with respect to Sergeant Nash that though plaintiff merely alleges that he attempted to restrain plaintiff, a jury crediting plaintiff's version of events could find that Nash failed to intervene in the presence of an unprovoked beating. Therefore I will not dismiss plaintiff's claims against Nash even though there is no allegation that he directly used unreasonable force upon plaintiff.

Finally, if plaintiff's version of events is true, defendants would not be entitled to qualified immunity because the constitutional right not to be subjected to excessive force was clearly established at the time and the officers could not have reasonably believed that their use of force was lawful.

Therefore I will deny defendants' motion for summary judgment with respect to plaintiff's § 1983 claim.

II.     Plaintiff's State Law Claim for Assault and Battery

Under Pennsylvania law "[a]ssault is an intentional attempt by force to do an injury to the

person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994), quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950). "A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." Renk, 641 A.2d at 293. "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." Id.

The Political Subdivision Tort Claims Act grants the local government agencies immunity from liability for any damages resulting from an injury to a person or property caused by any act of the agency, its employee, or any other person within the scope of his office or duties, except as specifically provided for under eight narrowly construed exceptions, none of which apply here. 42 Pa. C.S.A. § 8542. An employee's immunity does not extend to acts of defendants that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa. C.S.A. § 8550. "[W]hat is called for to demonstrate willful misconduct is not merely a showing of the use of excessive force to effectuate an arrest but a showing that the person who used excessive force not only intended to use that force but did so knowing that the force he was intentionally using was excessive and that he went ahead and used that excessive force anyhow." In re City of Phila. Litig., 938 F. Supp. 1264, 1272 (E.D. Pa.1996).

For the reasons stated above, I conclude a jury in this case could determine that the force used by defendants in arresting plaintiff was unnecessary or excessive. I further find that defendants are not entitled to immunity under the Tort Claims Act because a jury could determine that the force used by defendants amounted to willful misconduct. If plaintiff's

version of events is true, defendants would have known that such use of force on plaintiff was excessive.

Therefore I will deny defendants' motion for summary judgment with respect to plaintiff's state law claim for assault and battery.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP BOYD | : | CIVIL ACTION |
| | : | NO. 06-5628 |
| v. | : | |
| | : | |
| JOHN KISSINGER, et al. | : | |

ORDER

AND NOW, this 25th day of June 2008, upon consideration of defendants' motion for summary judgment and statement of undisputed facts, plaintiff's response and statement of facts, and defendants' reply, and for the reasons set forth in the accompanying memorandum of law, it is ORDERED that defendants' motion is DENIED.

The parties will indicate to the Court within ten (10) business days whether a settlement conference before Magistrate Judge Sitarski would be helpful in this matter.


                                                s/Thomas N. O'Neill, Jr.
                                                THOMAS N. O'NEILL, JR., J.